[Cite as *State v. Keagle*, 2019-Ohio-3975.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

JONATHAN KEAGLE

    Appellant

C.A. Nos.     29045
                  29056

APPEAL FROM JUDGMENT
ENTERED IN THE
STOW MUNICIPAL COURT
COUNTY OF SUMMIT, OHIO
CASE Nos.    2017TRC10067
                2017CRB03511

DECISION AND JOURNAL ENTRY

Dated: September 30, 2019

---

CARR, Judge.

**{¶1}** Appellant, Jonathan Keagle, appeals the judgment of the Stow Municipal Court. This Court affirms.

I.

**{¶2}** This matter arises out of a traffic stop that occurred in Macedonia, Ohio, during the early morning hours of October 28, 2017. Keagle, the driver of the vehicle, was charged with a number of offenses in relation to the stop. In Case No. 2017TRC10067, Keagle was charged with operating a vehicle while under the influence in violation of R.C. 4511.19(A)(1)(a) and driving without an operational tail light in violation of R.C. 4513.05(A). In Case No. 2017CRB03511, Keagle was charged with obstructing official business in violation of R.C. 2921.31(A) as well as a litany of minor misdemeanors.

{¶3} Keagle filed a motion to suppress wherein he alleged that his arrest was unlawful. The trial court denied the motion after a hearing. The matter proceeded to trial where a jury found Keagle guilty of obstructing official business and operating a motor vehicle while under the influence. The trial court found Keagle guilty of the minor misdemeanors. Keagle was sentenced according to law.

{¶4} Keagle filed notices of appeal from the sentencing entries in Case No. 2017CRB03511 and Case No. 2017TRC10067. On appeal, Keagle raises two assignments of error.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS EVIDENCE AS THE POLICE LACKED PROBABLE CAUSE TO ARREST WHEN THEY PLACED KEAGLE IN HANDCUFFS AND [*MIRANDIZED*] HIM.

{¶5} In his first assignment of error, Keagle contends that the trial court erred in denying his motion to suppress because the police lacked probable cause to place him under arrest. This Court disagrees.

{¶6} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion

of the trial court, whether the facts satisfy the applicable legal standard." *Id*., citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

**Background**

**{¶7}** Keagle raised a number of issues in his motion to suppress, including the basis for the traffic stop, whether there was reasonable suspicion of impairment to justify the administration of field sobriety tests, as well as whether there was probable cause to place him under arrest. With respect to the arrest, Keagle stated that "[t]he arresting Officer did not have probable cause to stop or arrest Mr. Keagle for the offense of operating a motor vehicle under the influence of alcohol or to form an opinion that Mr. Keagle was under the influence of alcohol while operating a motor vehicle, or that Keagle intended to prevent, obstruct or delay the performance of the officer's official duties."

**{¶8}** Both parties waived opening statements at the outset of the suppression hearing. When asked to clarify the issues raised in his motion, Keagle argued that police lacked probable cause to place him under arrest at the time of the stop because they had not yet administered field sobriety tests or any type of chemical tests.

**{¶9}** Following the hearing on Keagle's motion to suppress, the trial court made the following findings. Officer Kyle Horesh of the Macedonia Police Department was on patrol during the early morning hours of October 28, 2017. After noticing that the tail light was out on Keagle's vehicle, Officer Horesh initiated a lawful stop. There was a passenger in the vehicle at the time of the stop. With respect to Keagle's arrest, the trial court noted that he was initially arrested for obstructing official business, not OVI. After initiating the traffic stop, Officer Horesh smelled a strong odor of marijuana. Officer Horesh called for backup and then asked Keagle to step out so that police could search the vehicle. Keagle was slow to answer questions

and he refused to comply with the request to exit, at which time the decision was made to place him under arrest. When Keagle eventually exited the vehicle, police smelled the odor of alcoholic beverage on his person. They further observed that Keagle's eyes were watery and bloodshot, and that he was unsteady on his feet. Keagle also appeared to be confused. Though the officers decided not to administer field sobriety tests at the scene of the stop, the trial court stressed that Keagle had already been placed under arrest for obstructing official business. Thereafter, police searched the vehicle and discovered an open can of beer, a pill container containing marijuana seeds, and drug paraphernalia.

**Discussion**

{¶10} On appeal, Keagle maintains that while police "may" have had a valid reason to arrest him for OVI, his refusal to exit his vehicle cannot constitute a valid basis to arrest him for obstructing official business. Specifically, Keagle contends that "refusing a police officer's request/order -- such as refusing to exit a vehicle -- cannot be considered a violation of R.C. 2921.31." In support of this position, Keagle points to the Fourth District's decision in *State v Certain*, 180 Ohio App.3d 457, 2009-Ohio-148 (4th Dist.), and the Third District's decision in *State v. King*, 3d Dist. Marion No. 9-06-18, 2007-Ohio-335.

{¶11} At the outset, we note that Keagle's argument in his merit brief contains citations to both the trial transcript and the suppression hearing transcript. "Trial testimony, however, has no bearing upon a court's suppression ruling." *State v. Jackson*, 9th Dist. Summit No. 26234, 2012-Ohio-3785, ¶ 14. After the trial court makes findings of fact based on the evidence presented at the suppression hearing, this Court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8.

**{¶12}** Keagle cannot prevail on his argument. Initially, we note that the question of whether there was probable cause to search the vehicle is distinct from the question of whether there was a valid basis to place Keagle under arrest for suppression purposes. At the suppression hearing, Officer Horesh testified that he smelled the odor of burnt marijuana as he approached Keagle's vehicle. Officer Horesh further noticed that multiple windows were down, despite the fact that it was "about 40 degrees" that evening. Based on those observations, Officer Horesh had probable cause to search Keagle's vehicle. *See generally State v. Moore*, 90 Ohio St.3d 47, 50 (2000). Whether there was probable cause to arrest Keagle on obstruction of official business does not control whether probable cause existed to search the vehicle. Moreover, in relation to whether there was a valid basis to place Keagle under arrest, the record reveals that Keagle focused primarily on the OVI charge at the suppression hearing and maintained that police lacked probable cause to charge him with that offense without the benefit of field sobriety tests or the respective search results. As noted above, the trial court found that Keagle was initially arrested for obstruction of official business, as opposed to OVI. While Keagle now contends that refusing an officer's request cannot serve as the basis to arrest for obstructing official business as a matter of law, he did not develop that argument in his motion to suppress or at the hearing.[1] It follows that as Keagle did not develop this argument below, he is precluded from raising it for the first time on appeal. *See State v. Nestor*, 9th Dist. Summit No. 27800, 2016-Ohio-1333, ¶ 18.

**{¶13}** The first assignment of error is overruled.

---

[1] Though defense counsel referenced the obstruction of official business charge during his closing argument, he simply suggested that Keagle should not have been charged with that offense because the police experienced only a brief delay and were ultimately able to search the vehicle.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED BY DENYING THE CRIMINAL RULE 29 MOTION FOR OBSTRUCTION OF OFFICIAL BUSINESS BECAUSE REFUSING TO EXIT A MOTOR VEHICLE IS NOT AN AFFIRMATIVE ACT.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED BY DENYING THE CRIMINAL RULE 29 MOTION FOR OPERATING A MOTOR VEHICLE UNDER THE INFLUENCE WHERE THE OFFICERS ADMITTED THAT DEFENDANT'S DRIVING WAS LEGAL AND NORMAL AND WHERE THERE WERE NO FIELD SOBRIETY TESTS AND NO CHEMICAL TESTS ENTERED INTO EVIDENCE.

{¶14} In his second and third assignments of error, Keagle argues that the trial court erred when it denied his motion for acquittal on the charges of obstructing official business and OVI. This Court disagrees.

{¶15} Crim.R. 29(A) provides, in relevant part:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶16} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

## Background

{¶17} The State presented evidence supporting the following narrative during its case-in-chief. In the early morning hours of October 28, 2017, Keagle was driving a black Suburban without an operational tail light. Officer Horesh initiated a traffic stop. Keagle's cousin was in the passenger seat at the time of the stop. Upon approaching the vehicle, Officer Horesh noticed that both the driver and passenger windows were down despite the fact that the temperature was approximately 40 degrees. Officer Horesh noticed the stench of burnt marijuana coming from the vehicle. Officer Horesh further observed that Keagle's speech was slower than normal and his eyes were "severely bloodshot" and watery. When Officer Horesh asked Keagle if there was marijuana in the vehicle, Keagle broke eye contact for the first time and started looking down. Keagle disputed Officer's Horesh's belief that the odor of burnt marijuana was emanating from the vehicle.

{¶18} When backup arrived on the scene, Officer Horesh asked Keagle to step out of the vehicle. Keagle refused. Three different officers asked Keagle to exit the vehicle so that they could conduct a search. During that time, Keagle's cousin was removed from the vehicle without incident. Keagle insisted that he was not getting out of the truck and maintained that the officers were hassling him over a tail light violation. Keagle consistently refused the officers' command to exit the vehicle for a period of ten minutes. When Sergeant Hathaway opened the door and placed his hand on Keagle's thigh in order to forcibly remove him, Keagle finally relented and stepped out. Keagle was "unsteady on his feet" upon exiting the vehicle. Keagle was placed under arrest for obstructing official business. When police searched Keagle's person, they discovered a glass pipe containing raw marijuana and some burnt residue, rolling papers, a digital scale with marijuana particles on it, and a lighter with a compartment containing what

appeared to be marijuana particles. Inside the vehicle, police located a pill bottle with marijuana seeds, an additional pipe, albeit broken, and an open can of beer that was still cool to the touch.

### Obstructing Official Business

{¶19} Keagle was convicted of obstructing official business in violation of R.C. 2921.31(A), which states, "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."

{¶20} In support of his position that the trial court erred in granting his motion for acquittal, Keagle contends that he merely declined the officers' request to exit the vehicle. Keagle maintains that a defendant cannot be convicted under R.C. 2921.31(A) without having committed an affirmative act, and the State in this case failed to demonstrate that he committed an affirmative act that hampered or impeded a public official in the performance of his official duties.

{¶21} This Court has held that "[a]n affirmative act is required in order to support a finding that an individual was guilty of obstructing official business." *State v. Harris*, 9th Dist. Summit No. 27639, 2015-Ohio-5378, ¶ 7, quoting *North Ridgeville v. Reichbaum*, 112 Ohio App.3d 79, 84 (9th Dist.1996). "The 'mere failure to obey a law enforcement officer's request *may* not amount to obstruction.'" (Emphasis added.) *Harris* at ¶ 7, quoting *State v. Griffin*, 9th Dist. Summit No. 19278, 1999 WL 334781, *2 (May 26, 1999). However, failing to comply with an officer's order may constitute obstruction under some circumstances. "[A] suspect may indeed obstruct official business when he creates a significant delay by ignoring an officer's repeated orders, thereby impeding the officer's ability to perform his lawful duties." *State v.*

*Moss*, 9th Dist. Summit No. 28986, 2018-Ohio-4747, ¶ 12, citing *State v. Woodson*, 9th Dist. Wayne No. 07CA0044, 2008-Ohio-1469, ¶ 27. Moreover, this Court has noted that "if an officer has the right to detain an individual, the individual cannot continue walking away from the officer once he is aware that the officer is trying to detain him." *Harris* at ¶ 7, quoting *State v. Davis*, 140 Ohio App.3d 751, 753 (1st Dist.2000). This Court has further upheld a conviction for obstructing official business where the defendant pulled away from officers when they tried to remove him from his vehicle and then refused an officer's order to show his hands and, instead, tucked them under his torso to avoid being handcuffed. *State v. Williams*, 9th Dist. Summit No. 23176, 2007-Ohio-622, ¶ 28.

**{¶22}** Here, Keagle's contention that the trial court should have granted his Crim.R. 29 motion with respect to the charge of obstructing official business is without merit. The evidence presented at trial demonstrated that Keagle repeatedly refused to exit his vehicle despite possessing direct knowledge that police intended to conduct a probable cause search. Multiple officers implored Keagle to step out of his vehicle. For a period of ten minutes, Keagle defied the officers' requests and verbally quarreled with them, insisting that they were unjustifiably harassing him for a tail light violation. *See generally Moss* at ¶ 12-14. During that time period, Keagle, by refusing to exit his vehicle, acted to hamper and delay the investigation. This evidence, when construed in the light most favorable to the State, was sufficient to survive Keagle's motion for acquittal pursuant to Crim.R. 29.

**OVI**

**{¶23}** Keagle was also convicted of OVI in violation of R.C. 4511.19(A)(1)(a). R.C. 4511.19(A)(1)(a) states, "[n]o person shall operate any vehicle * * * within this state, if, at the

time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."

**{¶24}** In support of his positon that the trial court erred by denying his Crim.R. 29 motion in regard to the OVI charge, Keagle contends that the State failed to present sufficient evidence that he was under the influence at the time of the stop. Keagle stresses that there was no evidence that he was driving erratically and there were no field sobriety tests entered into evidence.

**{¶25}** The State presented ample evidence that Keagle was under the influence at the time of the stop. Though Keagle attempts to qualify the evidence admitted at trial, we remain mindful that this Court must construe the evidence in the light most favorable to the State when evaluating the sufficiency of the evidence. *Jenks*, 61 Ohio St.3d at 279. After Officer Horesh initiated the traffic stop, he noticed that the windows in the vehicle were down and that the odor of marijuana was emanating from the vehicle. Keagle's eyes were bloodshot and glossy. When police attempted to speak with Keagle, Keagle's speech was noticeably slow. Keagle was also argumentative and he disengaged when Officer Horesh raised the prospect that there might be marijuana in the vehicle. Though Officer Horesh did not notice Keagle driving erratically, Keagle was noticeably unsteady on his feet when he finally exited the vehicle. The ensuing searches turned up a catalogue of items that were indicative of recent drug use. Police also located an open beer in the vehicle. The aforementioned evidence, when construed in the light most favorable to the State, was sufficient to survive Keagle's motion for acquittal on the OVI charge.

**{¶26}** Keagle's second and third assignments of error are overruled.

III.

**{¶27}** Keagle's assignments of error are overruled. The judgment of the Stow Municipal Court is affirmed.

Judgment affirmed.

―――――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Stow Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

CALLAHAN, P. J.
CONCURS.

HENSAL, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶28} Although I agree that Mr. Keagle's first and third assignments of error should be overruled, I do not agree that he committed an affirmative act that could support his conviction for obstructing official business. According to the majority, Mr. Keagle "insisted that he was not getting out of the truck[,]" "maintained that the officers were hassling him[,]" "refused the officers' command to exit the vehicle[,]" "repeatedly refused to exit his vehicle[,]" "defied the officers' requests [to exit the vehicle,]" and "verbally quarreled with them, insisting that they were unjustifiably harassing him for a tail light violation." While Mr. Keagle's refusal to leave the vehicle may constitute a "failure to obey a law enforcement officer's request[,]" the majority acknowledges that our precedent establishes that it is insufficient to "amount to obstruction." *State v. Harris*, 9th Dist. Summit No. 27639, 2015-Ohio-5378, ¶ 7, quoting *State v. Griffin*, 9th Dist. Summit No. 19278, 1999 WL 334781, *2 (May 26, 1999). "[A] person 'cannot be guilty of obstructing official business by doing nothing[,]'" which is the only thing that Mr. Keagle "did" in refusing to exit his vehicle. *State v. McCrone*, 63 Ohio App.3d 831, 834 (9th Dist.1989), quoting *Hamilton v. Hamm*, 33 Ohio App.3d 175, 176 (12th Dist.1986).

{¶29} The majority cites *State v. Moss*, 9th Dist. Summit No. 28986, 2018-Ohio-4747, in support of its decision, but that case is distinguishable on its facts. In *Moss*, an officer approached a parked vehicle that contained two people that the officer suspected were engaging in sexual activity. The officer asked the people to identify themselves, but Mr. Moss refused. When the officer asked the other person to identify herself, Mr. Moss yelled at her not to talk to the officer and told her not to give him any information. She eventually gave her information. Mr. Moss, however, "kept moving his hands around toward his waist and his lower legs." *Id*. at ¶ 11. Because Mr. Moss kept "'jostling around' in his seat," the officer grew alarmed. *Id*. This

Court upheld Mr. Moss's conviction for obstructing official business because Mr. Moss was "'jostling around,' refusing to provide any identification or answer any questions, repeatedly moving his hands down toward his waist and lower legs, yelling, and telling S.M. to not cooperate with the officers." *Id*. at ¶ 13. Unlike in this case, the defendant in *Moss* actively hindered the identification of another individual and his movements, ostensibly an attempt to obscure or obstruct the investigation into illegal activity in the vehicle, impeded the officer's investigation by creating a safety concern. *Id*. ("Mr. Moss purposely committed several affirmative acts [that] * * * hampered or impeded the officers in their investigation * * *."). Mr. Keagle did not commit any such affirmative acts.

{¶30} Mr. Keagle's speech also does not constitute an affirmative act because "refusing to cooperate with a law enforcement officer is not punishable conduct." *McCrone* at 835. Furthermore, "a person has the right to verbally protest a police officer's actions or even to argue or curse at an officer * * *." *Pisoni v. McCord*, 5th Dist. Stark No. 2017CA00111, 2018-Ohio-64, ¶ 37; *City of Houston v. Hill*, 482 U.S. 451, 461 (1987) ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."). Upon review of the record, I would sustain Mr. Keagle's second assignment of error.

APPEARANCES:

DONALD GALLICK, Attorney at Law, for Appellant.

MARK GUIDETTI, Director of Law, for Appellee.